Jayne McKEE, Individually, her minor children, and as next friend of Richard McKee and Scott McKee, Plaintiff-Appellant,

v.

Louis SULLIVAN, Secretary of Health and Human Services, Defendant-Appellee.

No. 89-8328.

United States Court of Appeals, Eleventh Circuit.

June 22, 1990.

John Allen Howard, Fortson & White, Mary M. Brockington, Atlanta, Ga., for plaintiff-appellant.

Kenneth G. Levin, Atlanta, Ga., for amicus curae, Atlanta Legal Aid Society.

Sharon Douglas Stokes, Atlanta, Ga., for defendant-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

ANDERSON, Circuit Judge:

This case involves the novel question of whether 20 C.F.R. § 404.720(c) (1988) permits the consideration of circumstantial evidence in determining whether a person is dead for the purpose of social security benefits for his dependents.

### FACTS

The appellant married Richard Garrett McKee on February 14, 1981. They had a fourteen-month-old child and another child on the way when Mr. McKee disappeared. At the time of his disappearance, he lived with the appellant and was employed as an independent contractor who performed carpentry work. He had no arrests, and the family had no financial difficulties of which appellant was aware. Mr. McKee did not habitually leave his home for long periods of time, and, when he took weekend trips, he would call every day that he was gone. At the time of Mr. McKee's disappearance, he was on a fishing trip with Joseph O'Conner. The two men flew a twin engine Cessna from Atlanta to Florida. On January 14, 1985, Mrs. McKee received a telephone call from a Mr. Mike Carnes in Lake City, Florida. Mr. Carnes informed Mrs. McKee that he had been in radio contact with Mr. McKee; that Mr. McKee's plane was experiencing "tail problems"; that he was piloting the plane toward Jacksonville, Florida; and that he expected to return to Atlanta within two days. On the same day, United States Customs officials reported tailing a Cessna aircraft with two white males aboard through Central Florida over the Atlantic Ocean. The Cessna did a number of evasive maneuvers, including an aborted landing at Lake City, Florida. Once the aircraft was sixty miles northeast of Jacksonville, the Cessna began losing altitude and speed rapidly. No distress signal was made. The aircraft was lost both visually and on radar. Immediately, the Customs officials did a visual search of the area and did not see the aircraft; they believed that the aircraft had successfully evaded them. Neither the two men nor the aircraft has been seen since.

Between January 17 and January 24, 1985, the United States Air Force conducted a search and rescue operation over the area. No bodies or wreckage were ever found. Soon thereafter, the National Transportation Safety Board (NTSB) conducted an investigation of the incident. The Board reported the whereabouts of the aircraft and its passengers as unknown with the Cessna presumed destroyed and its passengers presumed dead.

On January 24, 1986, Mrs. McKee filed a "Petition for Declaration of Missing Person Presumed to be Dead" with the DeKalb County Probate Court. After publishing notice of the hearing on this matter, the probate court issued an order stating that a legal presumption of death had been established and ordering that notice be placed in the DeKalb County, Georgia and Jacksonville, Florida newspapers requiring any person to produce evidence of continued life. On August 7, 1986, Letters of Administration were issued. Soon thereafter, plaintiff was awarded benefits from Mr. McKee's life insurance policies.

On August 13, 1986, plaintiff filed applications with the Social Security Administration for survivor's benefits, mother's insurance benefits and children's insurance benefits. Plaintiff's applications were denied by the Secretary initially and upon reconsideration. Upon plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on May 6, 1987. On August 20, 1987, the ALJ found that plaintiff was not entitled to benefits because the evidence did not show that Mr. McKee could be considered dead or presumed dead under the applicable regulations. The ALJ refused to consider the NTSB report or the probate court decision as "other evidence of death" under 20 C.F.R. § 404.720(c).[1] This decision became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review. Mrs. McKee then filed suit in the district court. The district court affirmed.

Mrs. McKee appeals the district court's decision. She argues principally that the adjudicators below erred in disregarding the NTSB report and the probate court decision and that they were required to consider those determinations under 20 C.F.R. § 404.720(c) (1988). In addition, amicus curiae, Atlanta Legal Aid Society, argues that 20 C.F.R. § 404.721(a), which establishes a presumption of death after one year, applies to persons other than federal employees, and Mrs. McKee contends that the NTSB report should be considered under 20 C.F.R. § 404.720(b)(3)

(agency finding of death constitutes preferred evidence of death).[2]

## ANALYSIS

■■■ The law is well settled that the scope of review of an administrative determination is very narrow. We review the ALJ's decision to ensure that it is supported by substantial evidence and to ascertain whether the correct legal standard was applied. *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir.1988); *Walker v. Bower,* 826 F.2d 996, 1000 (11th Cir. 1987).

20 C.F.R. § 404.720(c) provides:

(c) *Other evidence of death.* If you cannot obtain the preferred evidence of a person's death, you will be asked to explain why and to give us other convincing evidence such as: the signed statements of two or more people with personal knowledge of the death, giving the place, date, and cause of death.

Directing our attention to the example provided, the Secretary argues that this regulation requires direct evidence of death. Mrs. McKee argues that the example does not foreclose the consideration of other evidence such as the probate court decision and the NTSB report.

■■ From a reading of the plain language of the regulation, we conclude that the district court and the ALJ erred in not considering the probate court decision and the NTSB report.[3] We agree with Mrs.

---

1. The ALJ also stated:

   Even if [the probate court's] findings could be considered under Section 404.720(c) the undersigned does not find them persuasive. As noted above, the Probate Court proceeding was not an adversarial proceeding, and there is no evidence to indicate the basis for the insurance companies [sic] decision to pay rather than challenge the policies. The claimant cannot use the Order of the Probate Court establishing a *presumption* of death under Georgia statute to establish the *fact* of death under Section 404.720.

   (Emphasis in original). The last sentence, in effect, applies the ALJ's initial determination that the probate court decision cannot be considered under Section 404.720. That statement undermines this court's confidence in the ALJ's assertion that, even if he did consider the probate court decision, his conclusion would not be

altered. Therefore, we proceed as if the ALJ did not consider the probate court's determination.

2. Mrs. McKee also argues that the decision was not supported by substantial evidence. Because we find that the court applied the incorrect legal standard, we remand to the ALJ for a reweighing of the evidence.

   Mrs. McKee's other arguments on appeal are without merit and warrant no discussion.

3. Under normal circumstances, an agency's interpretation of its own regulation is entitled to great deference. *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). However, this is not a case in which the Secretary has made a written interpretation of the regulation or has maintained a longstanding policy on the subject. There is no evidence in the record of the Secretary's interpretation of this regula-

McKee that the example provided in the regulation is merely illustrative and does not preclude the consideration of other evidence. The plain meaning of the term "other convincing evidence" includes any available evidence, either direct or circumstantial. *See Mando v. Secretary of Health and Human Services,* 737 F.2d 278 (2d Cir.1984) (although Secretary rebutted presumption of death after seven years absence under § 404.721(b), case remanded for ALJ to weigh *all* evidence); *Perez–Sordo v. Heckler,* Unempl.Ins.Rep. (CCH) ¶ 15,850 (S.D.Fla.1984) (probate court record of death is clearly "other convincing evidence" under 20 C.F.R. § 404.720(c)); *Hizer v. Harris,* Unempl.Ins.Rep. (CCH) ¶ 14,021 (W.D.Mich.1981) (evidence other than that conclusively establishing death admissible under § 404.720); *but see Carter v. Bowen,* No. C85–4717A (N.D.Ga. Mar. 9, 1987) (Moye, C.J.) (evidence of death in fact required by 404.720(c) and probate court order does not qualify); *Miller v. Richardson,* 321 F.Supp. 157, 158 (W.D.Pa.1970) (stating in dicta that 20 C.F.R. § 404.704 (now § 404.720) provides for consideration of direct evidence only). The Secretary's argument that the regulation only provides for direct evidence does violence to both the plain meaning of the regulation and to common sense.

With respect to the probate court finding, there is a second reason for our disposition. Although a probate court's disposition of assets is binding on "all the world," the probate court's underlying findings of death are not. *Branca by Branca v. Security Benefit Life Insur. Co.,* 773 F.2d 1158, 1163 (11th Cir.1985), *modified by* 789 F.2d 1511 (11th Cir.1986). However, a probate court's determination of the issues presented to an agency "is not to be completely ignored or discounted." *Aubrey v. Richardson,* 462 F.2d 782, 785 (3d Cir. 1972). We realize that the probate court decision in this case is not binding on the Secretary, *Dowell v. Gardner,* 386 F.2d 809 (6th Cir.1967); *Cain v. Secretary of Health, Educ. and Welfare,* 377 F.2d 55, 58 (4th Cir.1967); *Miller v. Richardson,* 321 F.Supp. 157, 159 (W.D.Pa.1970), and that the weight to be accorded that decision depends on all of the circumstances, including whether the proceeding was adversarial and what the purpose of the proceeding was. However, the probate court's determination must be considered when weighing the evidence to determine whether or not Mr. McKee is dead.

■ Next, we turn to amicus's argument that 20 C.F.R. § 404.721(a) (1988) applies to persons other than federal employees. Section 404.721(a) states:

If you cannot prove the person is dead but evidence of death is needed, we will presume he or she died at a certain time if you give us the following evidence:

(a) A certified copy of, or extract from, an official report or finding by an agency or department of the United States that a missing person is "presumed to be" dead as set out in Federal law (5 U.S.C. 5565). . . .

5 U.S.C. § 5565(a) (1980) provides:

(a) When an employee has been in a missing status almost 12 months and no official report of his death or the circumstances of his continued absence has been received by the head of the agency concerned, he shall have the case fully reviewed. After that review and the end of 12 months in a missing status, or after any later review which shall be made when warranted by information received or other circumstances, the head of the agency concerned or his designee may—

(1) direct the continuance of his missing status, if there is a reasonable presumption that the employee is alive; or

---

tion. The agency has cited two cases in order to establish its position: *Carter v. Bowen,* 738 F.Supp. 1418 (N.D.Ga.1987) (Moye, C.J.), and *Perez–Sordo v. Heckler,* Unempl.Ins.Rep. (CCH) ¶ 15,850 (S.D.Fla.1984). However, evidence of a litigating position is insufficient to establish an agency's interpretation, and, therefore, we are not required to accord the Secretary's position great deference. *See Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 473–74, 102 L.Ed.2d 493 (1988) (agency litigating positions wholly unsupported by regulations, rulings, or administrative practice are not entitled to deference); *William Bros. v. Pate,* 833 F.2d 261, 264–65 (11th Cir.1987) (litigating positions are not entitled to deference).

(2) make a finding of death.

Amicus argues that, at the time 404.721 was passed, only certain federal employees (e.g., foreign service employees and intermittent or temporary employees) were covered by the social security system, and that most other employees were covered by the Civil Service retirement system. Therefore, amicus contends that 404.721(a) does not relate only to federal employees, but rather it cites Section 5565 to establish the standards for agency findings where a presumption of death would be applicable after one year. Amicus requests that the NTSB report be considered under Section 404.721(a) to establish a presumption of death after one year.

We find this argument to be without merit. The plain language of the regulation refers to a statute which dictates how an investigation of the death of an *employee* is to proceed. The reliability and purpose of an investigation into an employee's death are not necessarily the same as in an investigation such as the one in this case. The purpose of Section 5565 is to provide the families of federal employees a swift and reliable determination of their loved one's fate, and the regulation thus provides the families of federal employees a swift determination of eligibility for social security benefits. We reject amicus's argument that the NTSB report establishes a presumption of death under 404.721(a).[4]

■ Mrs. McKee's final argument is that the NTSB report is "preferred evidence of death" under 20 C.F.R. § 404.720(b)(3) (1988). Section 404.720(b)(3) provides:

(b) *Preferred evidence of death.* The best evidence of a person's death is—

(3) A certified copy of, or extract from an official report or finding of death made by an agency or department of the United States. . . .

The NTSB report states that the aircraft was *presumed* destroyed and its passengers *presumed* dead. A presumption of death is not the equivalent of a finding of

death or a report of death. We construe Section 404.720(b)(3) to apply only to determinations of death in fact. *See Carter v. Bowen,* 738 F.Supp. 1418 (N.D.Ga.1987) (Moye, C.J.) (evidence of death in fact required by 404.720(b)); *but see Perez–Sordo v. Hecker,* Unempl.Ins.Rep. (CCH) ¶ 15,850 (S.D.Fla.1984) (probate court record of death is preferred evidence under 404.-720(b)(3)). The NTSB report only establishes a presumption of death, and, therefore, it cannot be considered under 404.720(b)(3).

## CONCLUSION

Although we reject several of appellant's claims on appeal, we find merit in her claim that 20 C.F.R. § 404.720(c) was incorrectly applied. Since the ALJ applied the incorrect legal standards to this case, we must reverse the decisions of the ALJ and the district court and remand this case to the ALJ for a reweighing of the evidence using the appropriate legal standard. *Smith v. Heckler,* 707 F.2d 1284, 1285 (11th Cir. 1983).

REVERSED and REMANDED.

---

**4.** Mrs. McKee argues that, if 20 C.F.R. § 404.721(a) applies only to federal employees, it violates due process by making an arbitrary and capricious distinction between federal and nonfederal employees. This argument is friv-

olous. *See Brown v. Heckler,* 723 F.2d 1135, 1138 n. 4 (3d Cir.1983). The federal government has a definite interest in a swift determination of the death of an employee for pay administration purposes.